IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GARY A. SHEPHERD and<br>LINDA C. SHEPHERD,<br><br>      Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL,<br>ASSOCIATION AS TRUSTEE FOR<br>OPTION ONE MORTGAGE LOANS<br>TRUST 2007-4, ASSET-BACKED<br>CERTIFICATES, SERIES 2007-4,<br><br>      Defendant. | § § § § § § § § § § § § § § § § | 1:15-CV-358 RP |

### ORDER

Before the Court are Defendant's Motion to Dismiss, filed April 7, 2016, (Dkt. 19), and the responsive filings thereto. After the Court's review of the briefing, the relevant case law, and the factual record, and holding a hearing on the motion, the Court grants Defendant's motion.

### I. Background

Plaintiffs Gary and Linda Shepherd ("Plaintiffs") brought this action on March 27, 2015 alleging wrongful foreclosure and breach of contract related to a mortgage loan agreement they entered on real property at 213 Rio Llano Drive East, Llano, Texas 78643 in February 2007 ("the Property"). (Dkt. 1-1.) Plaintiffs allege that they were not in default on the mortgage loan and never received the requisite notices regarding a foreclosure sale of the Property that occurred in December 2014. (Dkt. 1-1 ¶¶ 9–12.)

In November 2015, Defendant informed Plaintiffs that it would accept Plaintiffs' offer to settle the case for a discounted loan payoff. (Dkt. 19 ¶ 2.) Defendant further claims that its acceptance of the settlement offer was expressly "contingent upon the parties' execution of a formal settlement and release agreement and the dismissal of Plaintiffs' claims with prejudice." (*Id.*) After

1

significant negotiation over the form of the agreement, Plaintiffs executed the Confidential Settlement and Release Agreement ("Settlement Agreement") and delivered it to Defendant on February 24, 2016. (*Id.* ¶ 3.) The Settlement Agreement provides that the Plaintiffs will pay a discounted payoff of the mortgage loan in exchange for Defendant's recording "a satisfaction or mortgage and/or release of lien." (Dkt. 19-1 ¶ 1(c).) The Settlement Agreement also provides that the parties will cancel and rescind the foreclosure and dismiss this suit with prejudice. (Dkt. 19-1 ¶¶ 2–3.) Further, it provides that the suit will not be dismissed until the foreclosure has been rescinded and the release of lien has been recorded. (Dkt. 19-1 ¶ 3.) The payoff date listed on the Settlement Agreement signed by Plaintiffs was February 24, 2016, (Dkt. 24-1 ¶ 1(c)(i)), but the agreement also provides that Plaintiffs "shall not send the Discounted Payoff Amount until [the] Agreement has been fully-signed by the Parties," (Dkt. 24-1 ¶ 1(c)(ii)).

Defendant signed the Settlement Agreement on February 25, 2016, and returned it to Plaintiffs with a revised payoff date of February 26, 2014. (Dkt. 24 ¶ 7.) After Plaintiffs failed to send the payoff amount to Defendant, Defendant sent the Settlement Agreement to Plaintiffs again, with a revised payoff date of March 4, 2016. (Dkt. 24 ¶ 8.) As of April 1, 2016, Plaintiffs still had not sent the payoff amount to the Defendant. (Dkt. 25-3.) Other than these two extensions of the payoff date, the terms of the Settlement Agreement have not been modified since it was signed by the Plaintiffs.

On April 7, 2016, Defendant filed a motion to dismiss this case with prejudice pursuant to the Settlement Agreement. (Dkt. 19.) It argues that although Plaintiffs have failed to deliver the payoff amount, Plaintiffs are still contractually obligated to dismiss this case, and it is still obligated to rescind the foreclosure. (Dkt. 19 ¶ 4.) Defendant argues that it is not obligated to release the lien on the Property, however, because the payoff has not been tendered by Plaintiffs. (Dkt. 19 ¶ 4 n.1.) In their response, filed May 16, 2016, Plaintiffs argue that because the Defendants did not sign the

2

Settlement Agreement on February 24, 2016, it is not enforceable. (Dkt. 24 at 4.) In the alternative, they argue that the Defendant is not entitled to dismissal, but that this Court should order enforcement of the Settlement Agreement in full. (Dkt. 24 at 5.)

The Court held a hearing on Defendant's motion on July 20, 2016. (Dkt. 30.) Both parties admitted into evidence correspondence between counsel regarding the Settlement Agreement. (Dkt. 31). Defense counsel also sought to call Plaintiffs' attorney to the stand as a witness, but she declined.

## II. Discussion

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). Once entered, the parties typically cannot repudiate the settlement agreement. *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). Instead, "settlement agreements, when fairly arrived at and properly entered into, are generally viewed as binding, final and as conclusive of the rights of the parties as is a judgment entered by the court." *Rodriguez v. VIA Metro. Transit Sys.*, 802 F.2d 126, 128 (5th Cir. 1986). The Court will first consider the validity of the Settlement Agreement. If it determines a valid agreement exists, it will then consider the appropriate relief.

### A. Validity of Settlement Agreement

Plaintiff asserts that the settlement agreement is unenforceable because it "provided that the both [sic] parties must sign the Agreement by February 24, 2016" and Defendant signed the agreement the next day. (Dkt. 24 at 4.) Defendant responds that neither the agreement nor the law required Defendant to sign on February 24, 2016, for the agreement to be valid.

Although federal courts have inherent authority to enforcement settlement agreements, "the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." *Lee v. Hunt*, 631 F.2d 1171, 1173–74 (5th Cir. 1980). Under Texas

3

law, to form an enforceable contract, there must be "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capo Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).

Here, Plaintiffs do not specifically argue that a contract was not formed because one of these elements was not met, rather, they argue that the Settlement Agreement, by its terms, required that both parties sign on the same day for the contract to be enforceable. As an initial matter, however, the Court will consider the elements of contract formation. First, an offer was made on February 8, 2016, when "Defendant sent a revised version of the settlement agreement to Plaintiff." (Dkt. 24 ¶ 6.) Second, Plaintiffs accepted by signing the Settlement Agreement on February 24, 2016. (*Id.*) There is no suggestion that Plaintiffs made any revisions to the offer Defendants made on February 8, 2016 before signing, thus the undisputed facts indicate that it was made within strict compliance with the terms of the offer.

Third, the correspondence between the parties before and after the Settlement Agreement was signed by the Plaintiffs suggests a meeting of the minds. All evidence submitted to the court, both with the briefing regarding the motion to dismiss and at the hearing, indicates that they intended to enter a settlement under the terms laid out in the Settlement Agreement signed on February 24, 2016. *See Copeland*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied) ("[T]he determination of the meeting of the minds . . . that is required for contract formation is based on the objective standard of what the parties said and did and not on their subjective state of mind."). For example, counsel for Plaintiffs sent an email to Defendant's counsel on February 24, 2016, that her clients "intend[] to sign the settlement agreement" that day, and that she would "immediately have it forwarded to [Defendant] by email and first class mail." (Dkt. 31-2 at 4.)

4

Plaintiffs and their counsel had taken sixteen days to review Defendants' offer and had discussed and resolved outstanding concerns about settlement. (*Id.* at 5–7). Plaintiffs' counsel then sent the Settlement Agreement with Plaintiffs' signatures to Defendant's counsel later that day. (*Id.* at 3.

Fourth, the parties consented to the terms of the Settlement Agreement. Defendant prepared those terms and sent the agreement to Plaintiff, and Plaintiff signed the agreement, also consenting to those terms. *See Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App.—El Paso 2015, no pet.) ("[T]he fact that a party has signed a contract creates a 'strong presumption' that the party has assented to the terms of an agreement."). Plaintiffs' counsel also signed the agreement stating that she "approved [of the Settlement Agreement] as to form and content." (Dkt. 19-1 at 10.) Fifth and finally, after the contract was executed, the Plaintiffs delivered it to the Defendant on February 24, 2016. (Dkt. 31-2 at 3; Dkt. 24 ¶ 6.) The parties' intent to be bound by the contract was demonstrated by their treatment of the contract for several weeks following its execution, where they worked together to modify and extend the payoff date so that each party could perform their obligations under the contract. While Plaintiffs now assert the contract is unenforceable, Plaintiffs' counsel sought to have Defendant initial changes made to the contract after it was signed such that she could be certain that the contract would still be enforceable after the changes. (Dkt. 31-2 at 3 ("If we need to amend the payoff date, I propose that the parties simply initial the change."))[1] Further, Plaintiffs' counsel was herself the one that suggested extensions of the deadline. (Dkt. 31-2 at 3).

It was clear to the Court at the hearing that both parties consented to the agreement and, for several weeks, intended to be bound by it. Only after that motion was filed did Plaintiffs suggest that the agreement was not enforceable.

---

[1] When Defendant's counsel sent the Settlement Agreement with his client's signature and a revised payoff date of February 26, 2016 to Plaintiffs' counsel, he stated that he did not think the change in date needed to be initialed, but asked Plaintiffs' counsel to "let [me] know if you disagree." (Dkt. 25-1.) Plaintiffs' counsel did not respond or request that the change be initialed. (Dkt. 25 ¶ 11.)

Plaintiffs argue that the settlement agreement is invalid because "it expired by its own terms." (Dkt. 24 at 3.) The only contract language Plaintiffs identify in support of this argument is the term that provides that Plaintiffs are obligated to send the payoff amount on February 24, 2016 by 5:00 PM, but also not obligated to send the payoff until the agreement was signed by both parties. Plaintiffs claim that because Defendant did not sign the settlement agreement until February 25, 2016, it expired and became unenforceable.

The Court is not persuaded by Plaintiffs' argument for three reasons. First, there is no term in the settlement agreement that indicates that the agreement (or Defendants' offer) terminates or "expires" if it is not signed by both parties by February 24, 2016. While contracts may include a condition precedent for contract formation, the language that Plaintiffs identify only outlines a condition precedent to their performance of the contract. *See Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 143–44 (Tex. App.—Dallas 2012, no pet.) ("[C]onditions precedent may relate to either the formation of contracts or to the liability under them."). Second, a contract need not be signed by both parties in order for it to be valid, *see Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 392 (Tex. App.—Houston [14th Dist.] 1993, writ. denied) ("[F]or a contract to be valid, it is not necessary that the agreement be signed by both parties."), and, if Defendants signature was it is undisputed that the Defendants did sign the contract on February 25, 2016. (Dkt. 19 ¶ 3; Dkt. 24 ¶ 7). Third, even when an exact date of performance is named in a contract, that term can be waived by the parties. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 846 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The date may be extended expressly or by implication. *Id.* Here, the parties extended the payoff date twice, first when the Defendant signed the contract with an amended payoff date of February 26, 2016 and returned it to Plaintiffs on February 25, 2016, and second when the Defendant again amended the date, at Plaintiffs' request, to March 4, 2016 and returned it to Plaintiffs on February 29, 2016. These changes were made to the benefit, and at the suggestion, of

6

Plaintiffs. (Dkt. 31-2 at 3). Thus, the Court finds that that the Settlement Agreement is a valid enforceable contract, and the parties agreed to extend the payoff date from February 24, 2016 to February 26, 2016, and then to March 4, 2016.

Because "[c]ompromises of disputed claims are favored by the courts . . . '[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.'" *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391 (5th Cir. 1984) (quoting Callen v. Pennsylvania Railroad Co., 332 U.S. 625, 630 (1948)). Here, the Plaintiff has not met that burden, so the Court will enforce the Settlement Agreement.

### C. Enforcement of Settlement Agreement

The Fifth Circuit has repeatedly stated "that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 530 (5th Cir. 1986) (citing *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967)). Further, this Court has the power to enforce the agreement. *Mid-S. Towing*, 733 F.2d at 389 ("A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it.").

There are four key provisions covered by the Settlement Agreement: (1) the Plaintiffs would tender the payoff amount, (2) after payoff was made, the Defendant would release the lien on the Plaintiffs' home, (3) the Defendant would rescind the foreclosure, and (4) after the lien was released and the and the foreclosure was rescinded, the parties would dismiss the action.

Unfortunately, this Court does not have the option to "summarily" enforce the settlement in full and as it was agreed to by the parties. Plaintiffs breached the agreement long ago when they missed the payoff deadline (and short extensions to that deadline) that was outlined in the

7

agreement.[2] (*See* Dkt. 19-2 at 1; *see also* Dkt. 24-1 (February 24, 2016 payoff date); Dkt. 24-2 (February 26, payoff date); Dkt. 19-1 (March 4, 2016 payoff date).) The settlement also contained a "Time Is Of The Essence Clause," indicating that the Defendant, who agreed to two short extensions, would not consent to accepting the same payoff it originally agreed to now, many months later. (*See* Dkt. 24-1 ¶ 19.) Thus, the Court will consider this case now as a breach of contract action.

### D. Breach of Contract

The elements of a breach of contract are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.). Here, a valid contract exists, *see* Part II.A, and Defendant has repeatedly tendered performance by indicating its willingness to file the rescission (and initially, the release of lien). (*See* Dkt. 25-2 at 1 ("We trust you client will wire the discounted payoff funds . . . so that we may then move forward with finalizing all other aspects of the settlement."); Dkt. 19-2 at 1 ("[W]e are ready, willing, and able to file the Rescission of Foreclosure pursuant to Section 2 of the Agreement."); Dkt. 19 at 4 (requesting that the Court dismiss the suit after it files a notice confirming rescission has been recorded).) Further, plaintiff has breached by not forwarding the payoff amount by any of the payoff dates agreed to by the parties. (Dkt. 19-2 at 1.) Finally, Defendant has sustained injury by not receiving the payoff amount and incurring attorney's fees. Specifically, Defendant indicated at the hearing that it had incurred approximately $40,000 in legal fees negotiating the settlement agreement. Thus, the Court concludes that there was plainly a breach of the Settlement Agreement by the Plaintiff in this case.

---

[2] While Plaintiffs disputed the validity of the settlement agreement, as discussed above, it is undisputed that if the contract is valid and enforceable, Plaintiffs breached by not forwarding the payoff amount to Defendants. (Dkt. 24 at 7 (suggesting to the Court that it treat the case as a breach of contract action).)

### E. Relief

The Settlement Agreement does not address how a breach of the agreement may be remedied. Because Defendant bargained for dismissal of the suit as part of the Settlement Agreement, Defendant now seeks to enforce the agreement through a motion to dismiss. The Settlement Agreement provides:

> The Parties agree to dismiss the Action with prejudice and without costs. The Parties' counsel shall execute the Agreed Stipulation of Dismissal with Prejudice and proposed Order attached as Exhibit B to this Agreement simultaneously with the Parties' execution of this Agreement. However, the Dismissal shall not be filed until the Rescission Deed and Release Documents have been recorded and proof of recording has been submitted to Borrowers.

(Dkt. 19-1 ¶ 3). Specifically, Defendant requests that the Court "enter an order providing that this case will be dismissed with prejudice, with each party to bear their own costs and attorneys' fees, after the Defendant files . . . a notice confirming the Rescission Deed has been recorded." (Dkt. 19 at 4.) Essentially, by asking the Court for dismissal of the suit, Defendant is seeking specific performance.

"Under Texas law, specific performance is an equitable remedy that is normally available only when the complaining party cannot be fully compensated through the legal remedy of damages or when damages may not be accurately ascertained." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 153 (5th Cir. 2004). A party seeking specific performance must plead and prove: (1) compliance with the contract, including tender of performance unless excused by the defendant's breach or repudiation; and (2) the readiness, willingness, and ability to perform at relevant times. *Di Giuseppe v. Lawler*, 269 S.W.3d 588, 593–94, 601 (Tex. 2008).

Here, the value of Plaintiffs' agreement to dismiss their claims for wrongful foreclosure and breach of contract is difficult to ascertain. Additionally, Plaintiffs have already agreed to pay the Defendant an agreed payoff amount for the mortgage, but are unwilling or unable to pay that amount. Thus, the legal remedy of damages would be inappropriate in this case. Further, Defendant

9

has repeatedly indicated its willingness to perform its obligations under the Settlement Agreement. *See* Part II.D. While Defendant now indicates that it is unwilling to release the lien on the Property, that obligation is excused by Plaintiffs' failure to tender the payoff amount. Thus, the Court concludes that Defendant is entitled to specific performance to enforce the Settlement Agreement.

Notably, Defendant has only requested dismissal, and only requested that dismissal is entered after it records a rescission of foreclosure. This is an equitable remedy for Plaintiffs' breach of the Settlement Agreement. It terminates both this suit and the existing foreclosure. It leaves the lien, and whatever amount Plaintiffs owe on the mortgage on the Property unaltered. Further, if Defendant seeks to again foreclose on the Property, it will need to initiate a new foreclosure action.

### III. Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss with Prejudice Pursuant to Settlement (Dkt. 19) is **GRANTED**. It is further **ORDERED** that the Court will enter a final order dismissing all claims brought by Plaintiffs against Defendants in this action, with each party to bear their own costs and attorney's fees after Defendant files with the Court a notice confirming the Rescission Deed, as described in the Settlement Agreement, has been recorded in the real property records of Llano County, Texas, with a copy of the recorded Rescission Deed to be attached to said notice.

**SIGNED** on August 19, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE